**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| Denise Warnock, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>2nd Chance Solutions, Limited a/k/a 2nd Chance Credit Funding, and David Lugo,<br><br>Defendants. | CASE NO.<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

**Nature of this Action**

1. Denise Warnock ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against 2nd Chance Solutions, Limited a/k/a 2nd Chance Credit Funding ("2nd Chance") and David Lugo ("Mr. Lugo," and collectively, "Defendants") under the Telephone Consumer Protection Act ("TCPA").

2. Upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(b)(1)(A)(iii) by using an artificial or prerecorded voice to place non-emergency calls to telephone numbers assigned to a cellular telephone service without prior express consent.

3. Specifically, Defendants routinely and repeatedly call consumers' cellular telephone numbers—like Plaintiff—while leaving artificial or prerecorded voice in an effort to offer their debt relief, debt consolidation, or credit repair services.

4. Additionally, upon information and belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or marketing telephone call to residential telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

## Parties

5. Plaintiff is a natural person who at all relevant times resided in Cleveland, Ohio.

6. 2nd Chance is a Massachusetts for-profit corporation that runs a debt relief, debt consolidation, and credit repair business that is headquartered in Wakefield, Massachusetts.

7. Upon information and belief, Mr. Lugo is a natural person who at all relevant times resided in Saugus, Massachusetts.

8. Mr. Lugo is listed as the registered agent, president, treasurer, secretary, and director of 2nd Chance.

9. Upon information and belief, Mr. Lugo is the owner and operator of 2nd Chance, and receives the benefit of any profits obtained by 2nd Chance.

## Jurisdiction and Venue

10. This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(1)(a)(iii), 47 U.S.C. § 227(c)(5), and 28 U.S.C. § 1331.

11. Venue is proper before this Court under 28 U.S.C. § 1391(b)(2) as Plaintiff is based in this District and a significant portion of the events giving rise to this action occurred in this District.

12. In particular, Defendants directed their telephone calls and prerecorded voice messages to Plaintiff's telephone in this District, and Plaintiff received Defendants' telephone calls and prerecorded voice messages in this District.

## Factual Allegations

13. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(216) 235-XXXX.

14. Plaintiff uses her cellular telephone as her personal residential telephone number.

15. In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC Registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

16. Plaintiff registered her cellular telephone number with the DNC Registry on October 10, 2003, and has maintained that registration through the present date.

17. Beginning in or around December 2025 and continuing through the present, Plaintiff began receiving numerous calls on her cellular telephone from several telephone numbers, leaving voicemails offering personal loan services for those with mounting debt:





[1]

18. Samples of these voice messages can be found HERE.

19. Each of these telephone calls left prerecorded voice messages delivered to her cellular telephone.

20. Each of the voicemails contain virtually the same content, with a "Michael" discussing Defendants' services in a consistent and exacting manner, and beginning each message with a "Happy [Day of the Week]" opening.

21. Notably, the first two voicemails placed by Defendants are *identical*, as both December 31, 2025 and January 7, 2026 both fell on a Wednesday, both voicemails are 49 seconds

---

1 Although the last screenshot indicates it was from "Today", that screenshot was taken on February 3, 2026.

in length, and a comparison of the contents in both voicemails show the same statements, including identical intonations and tone, made by "Michael."

22. Therefore, upon information and belief, Defendants prerecorded different voice messages for each day of the week that voice messages are delivered by Defendants.

23. The purpose of the prerecorded voice messages is to advertise and to market Defendants' debt relief offerings.

24. Upon information and belief, the voice of "Michael" in these voicemails is *actually Mr. Lugo himself operating under a "Michael" pseudonym*, based on a comparison between the voicemails and Mr. Lugo's Instagram posts using his face and voice.[2]

25. Therefore, upon information and belief, Mr. Lugo personally recorded the prerecorded voicemails delivered to Plaintiff.

26. Plaintiff did not request any services discussed in the subject telephone calls and voice messages.

27. Plaintiff did not recognize the sender of these telephone calls.

28. Plaintiff is not, and was not, interested in any sort of personal loan or debt relief services.

29. Plaintiff is not, and was not, interested in Defendants' services or marketing.

30. Upon information and belief, due to the number and repetition of telephone calls, Plaintiff believes that Defendants placed additional telephone calls to Plaintiff not specified above.

31. Each voicemail left a callback number of (650) 431-3824 and Defendants' website: https://2ndchancecreditfunding.com/.

---

[2] *See, e.g.*, https://www.instagram.com/p/DI4kSB2PybU/?hl=en (last visited March 16, 2026); https://www.instagram.com/p/DJXcgvZP2f5/?hl=en (last visited March 16, 2026); https://www.instagram.com/reel/DI1nAzYvIac/?hl=en (last visited March 16, 2026).

32. Defendants' website indicates that they offer various debt consolidation services structured as a personal loan.[3]

33. Upon information and belief, Defendants derive profit from these loan offerings as the targeted consumer would either (1) pay Defendants pursuant to the loan obligations; or (2) pay commission to Defendants for arranging a loan with a third party.

34. Defendants' voice messages concede that they are made without consent, as the messages do not indicate that they are sent in response to a consumer inquiry, are generic in nature, and the end of the voice message directs consumers to visit Defendants' website to opt out of future communications.

35. However, this would be all for naught, as Consumer complaints reveal that many others suffer at the hands of Defendants' incessant cold calling telemarketing efforts even if they "opt-out":




3 https://2ndchancecreditfunding.com/ (last visited March 16, 2026).

**Initial Complaint**
Date: 07/16/2025

Type: Product Issues
Status: Unanswered

After repeatedly calling me, I called back and selected the remove me from your call list option. Ive also been on the National Do Not Call registry since 2020. Despite both, they called me again yesterday while I was at work. So I [redacted] them hoping to find an email, and I did. But when I wrote in asking them to take me off their call list, it bounced back, even though I copied and pasted their email directly from their website. I noticed they have their Instagram linked on their website, so I reached out through their messaging service. I wrote them asking them to remove me from their call list and let them know that their email kicked back and that they seemed like a scam. And at 12:04am, they finally responded refuting the scam accusation. Further reading would suggest that they are indeed scamming people.

**Customer Answer**
Date: 07/26/2025

I have not heard from the business in response to my complaint.

**Initial Complaint**
Date: 07/09/2025

Type: Service or Repair Issues
Status: Unanswered

Harassing phone calls, every day.I have selected to have my number removed from their list, still getting calls.I then called and spoke with a live agent, hung up on me.This needs to stop. Every day phone calls and vms left.

**Customer Answer**
Date: 07/22/2025

I have not heard from the business in response to my complaint.

once again, they continue to call me and mention they will remove my number. This is harassment.

[4]

36. In light of Mr. Lugo's (1) use of his own voice for multiple variations of prerecorded voice messages used by 2nd Chance; (2) his position as the owner, operator, and manager of 2nd Chance; and (3) the fact that he is compensated for each of the deals that 2nd Chance sources via its telemarketing and robocalling campaigns, Mr. Lugo personally directed 2nd Chance to engage in the prerecorded voice telemarketing campaign at issue here, and personally directed 2nd Chance to do so without first obtaining consent, or heeding the DNC Registry.

37. Plaintiff did not give Defendants prior express consent or prior express written

---

[4] https://www.bbb.org/us/ma/wakefield/profile/credit-repair-services/2nd-chance-credit-solutions-0021-568466/complaints (last visited March 16, 2026).

consent to place calls to her cellular telephone number by using an artificial or prerecorded voice.

38. Upon information and belief, and in light of the nature and character of the voice messages at issue, including the delivery of repeated identical voice messages on different dates, Defendants used a prerecorded voice to deliver calls to Plaintiff's cellular telephone number.

39. Upon information and belief, Defendants placed the telephone calls to Plaintiff's cellular telephone number for non-emergency purposes.

40. Upon information and belief, Defendants placed the telephone calls to Plaintiff's cellular telephone number voluntarily.

41. Upon information and belief, Defendants placed the telephone calls to Plaintiff's cellular telephone number under their own free will.

42. Upon information and belief, Defendants had knowledge that they were using an artificial or prerecorded voice to place their calls to Plaintiff's cellular telephone number.

43. Upon information and belief, Defendants intended to use an artificial or prerecorded voice to place calls to Plaintiff's cellular telephone number.

44. The purpose of the solicitation telephone calls at issue was to advertise and to market Defendants' business or services.

45. Additionally, upon information and belief, Defendants also collect motivated seller consumer data and resell that information to investors or third parties.[5]

46. Plaintiff did not give Defendants prior express invitation or permission to place advertising or telemarketing calls to her cellular telephone number.

47. Plaintiff suffered actual harm as a result of the calls at issue in that she suffered an

---

[5] *See* https://www.instagram.com/reel/C_oXKDJPDOb/?hl=en (discussing Defendants' desire to purchase disqualified prospects and leads) (last visited March 16, 2026).

invasion of privacy, an intrusion into her life, and a private nuisance.

48. Upon information and good faith belief, Defendants knew, or should have known, that Plaintiff registered her cellular telephone number with the DNC Registry.

**Class Action Allegations**

49. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes (the "Classes"):

**Robocall Class:**

> All persons and entities throughout the United States (1) to whom 2nd Chance Solutions, Limited placed, or caused to be placed, a call directed to a number assigned to a cellular telephone service, but not assigned to a customer of 2nd Chance Solutions, Limited, (2) by using an artificial or prerecorded voice, (3) from four years preceding the date of this complaint through the date of class certification.

**Federal Do-Not-Call Registry Class:**

> All persons throughout the United States (1) to whom 2nd Chance Solutions, Limited delivered, or caused to be delivered, more than one telephone call within a 12-month period, promoting 2nd Chance Solutions, Limited's, or its business partners', goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before 2nd Chance Solutions, Limited delivered, or caused to be delivered, at least two of the telephone calls within the 12-month period, (3) where the person's telephone number is not assigned to a customer of 2nd Chance Solutions, Limited, (4) within four years preceding the date of this complaint through the date of class certification.

50. Excluded from the Classes are Defendants, their officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

51. Upon information and belief, the members of the Classes are so numerous that joinder of all of them is impracticable.

52. The exact number of members of the Classes are unknown to Plaintiff at this time,

and can be determined only through appropriate discovery.

53. The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria.

54. In addition, the members of the Classes are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties, including members of the Classes.

55. Plaintiff's claims are typical of the claims of the members of the Classes.

56. As they did for all members of the Robocall Class, Defendants placed telephone calls by using an artificial or prerecorded voice to Plaintiff's cellular telephone number absent prior express consent.

57. As they did for all members of the Federal Do-Not-Call Registry Class, Defendants delivered solicitation telephone calls to Plaintiff's residential telephone number more than thirty days after Plaintiff registered their telephone number with the DNC Registry absent prior express written consent.

58. Plaintiff's claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendants.

59. Plaintiff's claims are based on the same theories as are the claims of the members of the Classes.

60. Plaintiff suffered the same injuries as the members of the Classes.

61. Plaintiff will fairly and adequately protect the interests of the members of the Classes.

62. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

63. Plaintiff will vigorously pursue the claims of the members of the Classes.

64. Plaintiff has retained counsel experienced and competent in class action litigation.

65. Plaintiff's counsel will vigorously pursue this matter.

66. Plaintiff's counsel will assert, protect, and otherwise represent the members of the Classes.

67. The questions of law and fact common to the members of the Classes predominate over questions that may affect individual members of the Classes.

68. Issues of law and fact common to all members of the Classes include:

a. Defendants' conduct, pattern, and practices as it pertains to placing advertisement and telemarketing telephone calls and delivering artificial or prerecorded voice solicitation messages;

b. For the Robocall Class, Defendants' practice of placing telephone calls to cellular telephone numbers, with the use of an artificial or prerecorded voice, absent prior express consent;

c. For the Federal Do-Not-Call Registry Class, Defendants' practice of delivering telephone calls, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days, absent prior express written consent;

d. Mr. Lugo's responsibility and role in 2nd Chance's delivery of artificial or prerecorded voice messages to cellular telephone numbers absent prior express consent, along with his responsibility and role in 2nd Chance's placement of telephone calls to telephone numbers already registered on the DNC Registry absent prior express written consent;

e. Defendants' violations of the TCPA; and

f. The availability of statutory penalties.

69. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

70. If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

71. The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

72. The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

73. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.

74. The damages suffered by the individual member of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

75. The pursuit of Plaintiff's claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

76. There will be no extraordinary difficulty in the management of this action as a class action.

77. Defendants acted or refused to act on grounds generally applicable to the members

of the Classes, making final declaratory or injunctive relief appropriate.

**Count II**
**Violation of 47 U.S.C. § 227(b)(1)(A)(iii)**
**On behalf of the Robocall Class**

78. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-77.

79. 2nd Chance violated 47 U.S.C. § 227(b)(1)(A)(iii) by delivering artificial or prerecorded voice messages to Plaintiff's cellular telephone number without prior express consent.

80. As a result of ACE's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff, and the members of the Robocall Class, are entitled to damages in an amount to be proven at trial.

81. Additionally, as the manager, operator, and owner of 2nd Chance, and given his involvement in the recording of the at-issue prerecorded voice messages, Mr. Lugo directed and controlled 2nd Chance's decision to deliver artificial or prerecorded voice messages to Plaintiff's cellular telephone number without prior express consent.

82. As a result, Mr. Lugo is also personally and vicariously liable for 2nd Chance's conduct, as he personally directed and participated in 2nd Chance's violations of the TCPA.

**Count II**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Federal Do-Not-Call Registry Class**

83. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-77.

84. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

85. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

86. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

87. 2nd Chance violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the members of the Federal Do-Not-Call Registry Class who registered their respective residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

88. 2nd Chance violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and the Federal Do-Not-Call Registry Class, more than one solicitation telephone call in a 12-month period in violation of 47 C.F.R. § 64.1200.

89. Additionally, as the manager, operator, and owner of 2nd Chance, and given his involvement in 2nd Chance's telemarketing operations, Mr. Lugo directed and controlled 2nd Chance's decision to place telephone calls to Plaintiff's residential telephone number, and the residential telephone numbers of the Federal Do-Not-Call Registry Class, without prior express written consent, despite their registration on the DNC Registry.

90. As a result, Mr. Lugo is also personally and vicariously liable for 2nd Chance's conduct, as he personally directed and participated in 2nd Chance's violations of the TCPA.

91. As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiff, and the members of the Federal Do-Not-Call Registry Class, are entitled to damages in an amount to be proven at trial.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action;

b. Designating Plaintiff as a class representative of the proposed Classes under Federal Rule of Civil Procedure 23;

c. Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d. Adjudging and declaring that Defendants violated 47 U.S.C. § 227(c)(5);

e. Enjoining Defendants from continuing their violative behavior, including continuing to deliver solicitation telephone calls to telephone numbers registered with the DNC Registry for at least thirty days;

f. Awarding Plaintiff and the members of the Robocall Class damages under 47 U.S.C. § 227(b)(3)(B);

g. Awarding Plaintiff and the members of the Robocall Class treble damages under 47 U.S.C. § 227(b)(3)(C);

h. Awarding Plaintiff and the members of the Federal Do-Not-Call Registry Class damages under 47 U.S.C. § 227(c)(5)(B);

i. Awarding Plaintiff and the members of the Federal Do-Not-Call Registry Class treble damages under 47 U.S.C. § 227(c)(5)(C);

j. Awarding Plaintiff and the members of the Classes reasonable attorneys'

fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

k. Awarding Plaintiff and the members of the Classes any pre-judgment and post-judgment interest as may be allowed under the law; and

l. Awarding such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: March 19, 2026.

*/s/ Bryan A. Giribaldo*
Bryan A. Giribaldo* (to seek admission *pro hac vice*)
bgiribaldo@pkglegal.com
Alex D. Kruzyk* (to seek admission *pro hac vice*)
akruzyk@pkglegal.com
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd., Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444
Fax: (877) 453-8003

*Counsel for Plaintiff and the proposed classes*